City of Keller v. Wilson

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-00-183-CV

THE CITY OF KELLER
 APPELLANT

V.

JOHN W. WILSON,  
 
APPELLEES

GRACE S. WILSON,

JOHNNY L. WILSON, AND 

NANCY A. WILSON 

------------

FROM THE 96TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION ON REMAND AND ON REHEARING EN BANC

------------

I.  Introduction

We grant the City of Keller’s motions for rehearing and en banc rehearing, withdraw our opinion and judgment of June 22, 2006, and substitute the following. 

John W. Wilson, Grace S. Wilson, Johnny L. Wilson, and Nancy A. Wilson sued the City for inverse condemnation and water code violations.  The Supreme Court of Texas remanded this case to us after rendering judgment that there is no evidence supporting the intent element of the Wilsons’ inverse condemnation claim.
(footnote: 1)  In our initial opinion on remand, we addressed the City’s seventh issue on appeal, which challenges the legal and factual sufficiency of the evidence to support the jury’s finding that the City violated section 11.086 of the Texas Water Code because it “diverted the natural flow of surface water in a manner that damaged” the Wilsons’ property.
(footnote: 2)  We held, with one justice dissenting, that there is legally and factually sufficient evidence to support this finding and affirmed the trial court’s judgment on the Wilsons’ water code violation claim.
(footnote: 3)
 In its motion for rehearing, the City argues that the Wilsons cannot recover from the City on their water code violation claim because the City is immune from suit on that claim.
(footnote: 4)  Because we conclude that the City is immune from suit on the Wilsons’ water code violation claim and that neither the Legislature nor the City has waived the City’s immunity from suit, we dismiss the claim and vacate the trial court’s judgment for the Wilsons on that claim.

II.  Factual Background

The Wilson property is located southeast of the Oak Run and Rancho Serena subdivisions in the City of Keller.  A piece of land owned by A.T. Sebastian lies between the Wilson property and the subdivisions.  In 1991, before the Oak Run and Rancho Serena subdivisions were built, the City approved a Master Drainage Plan providing for drainage easements across both the Wilson and Sebastian properties into the Little Bear Creek Watershed.  The City’s codes require developers to comply with the Master Plan, to provide drainage for a 100-year rain event, and to avoid increasing the volume or velocity of water discharged upon downhill properties.

The developers of Oak Run and Rancho Serena submitted plans to the City indicating that they would buy a drainage easement and build a ditch forty-five feet wide and more than two hundred yards long across the Sebastian property and deed both to the City upon completion.  The plans also included detention basins on the subdivision properties, but they omitted any drainage easement or ditch across the Wilson property.  The City’s director of public works approved the developers’ plans, and the City accepted the works upon their completion.

In accordance with the Master Plan, the City built a box culvert south of the Wilson property, but because the developers’ drainage ditch ended at the Wilsons’ north property line, there was no link between the ditch and the box culvert.  The Wilsons alleged and the jury found that this omission caused the diversion of the natural flow of surface water across the Wilson property, ruining eight acres of farmland that the jury valued at almost $300,000.

III.  Sovereign Immunity From Suit

The City argues that the Wilsons’ claim against it under section 11.086 of the water code is barred by sovereign immunity and that its immunity has not been waived because there is no clear and unambiguous language in the water code that evidences legislative intent to waive immunity. 

Section 11.086 of the water code provides, 

(a)  No person may divert or impound the natural flow of surface waters in this state . . . in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.
(footnote: 5)
 In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit.
(footnote: 6)  A municipality is immune from suit for torts committed in the performance of its governmental functions.
(footnote: 7)  A plaintiff who sues a governmental entity must establish the consent to suit.
(footnote: 8)
 Subject matter jurisdiction is essential to a court’s authority to decide a case.
(footnote: 9)  It cannot be waived and may be raised for the first time on appeal.
(footnote: 10)  Whether a court has subject matter jurisdiction is a question of law.
(footnote: 11)  If a trial court lacks subject matter jurisdiction over a claim, the claim must be dismissed.
(footnote: 12)  Therefore, unless the Legislature has waived the City’s sovereign immunity from suit for the Wilsons’ claim that the City violated the water code by diverting surface water across the Wilson property, the trial court had no subject matter jurisdiction over that claim, and we must dismiss it.

A.  Clear and Unambiguous Waiver of Sovereign Immunity

in the Statute’s Language

It is well-settled law in Texas that for the Legislature to waive a municipality’s sovereign immunity from suit, the statute at issue must contain a clear and unambiguous expression of the Legislature’s waiver of immunity.
(footnote: 13)  In 2001, the Legislature codified this standard by adding section 311.034 to the Code Construction Act, which provides as follows:  “In order to preserve the legislature’s interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.”
(footnote: 14)
 The water code does not contain the type of language that the Legislature generally uses to confirm its intent to waive immunity from suit.
(footnote: 15)  We must, therefore, examine four factors promulgated by the supreme court to determine whether the water code contains otherwise clear and unambiguous waiver language.
(footnote: 16)  
First, the supreme court has held that a statute that waives immunity must do so “beyond doubt,” although the statute need not be a model of perfect clarity.
(footnote: 17)  Second, when construing a statute that purportedly waives sovereign immunity, the supreme court generally resolves ambiguities by retaining immunity.
(footnote: 18)  Third, if the Legislature requires the State to be joined in a lawsuit for which immunity would otherwise attach, the supreme court has held that the State’s sovereign immunity has been intentionally waived
.
(footnote: 19)  The fourth factor the supreme court considers when deciding whether the Legislature intended to waive sovereign immunity is whether the statute provides an objective limitation on the State’s potential liability in order to insulate public resources
 from the reach of judgment creditors.
(footnote: 20)  If such a limitation exists, the court is likely to find waiver.
(footnote: 21)
 We will now apply these principles to determine whether the Legislature waived the City’s sovereign immunity from suit by enacting section 11.086 of the water code.

The Wilsons contend that the Legislature expressly waived the City’s sovereign immunity because the term “person” in section 11.086(a) includes municipalities.  The Wilsons acknowledge that the term “person” is not expressly defined in the water code.  They observe, however, that section 1.002 of the water code provides that section 311.005 of the government code applies to the water code,
(footnote: 22) and that section 311.005 of the government code defines “person” to include “
government or governmental subdivision or agency
.”
(footnote: 23)  According to the Wilsons, by incorporating the government code’s definition of person into section 11.086(a) of the water code, the Legislature clearly and unambiguously meant to waive the City’s immunity from suit.

The Supreme Court of Texas has held, however, that the mere incorporation of a definition from one statute into another that includes both private and governmental entities does not clearly express legislative intent to waive the governmental entities’ immunity from suit.
(footnote: 24)  For example, in 
Wichita Falls State Hospital v. Taylor,
 the supreme court held that the Legislature’s authorization of a suit against a “mental health facility” in section 321.003 of the health and safety code (the patient’s bill of rights) was not a clear and unambiguous waiver of sovereign immunity.
(footnote: 25)  “Mental health facility” is not defined in chapter 321 of the health and safety code; 
instead, the statute incorporates the definition of mental health facility found in section 571.003 of the health and safety code, which includes both private and governmental entities.
(footnote: 26)  Upon concluding that the patient’s bill of rights does not waive the State’s immunity beyond doubt because the statute achieved its stated objective of regulating private treatment facilities even if suit against the State is barred by immunity, the supreme court held,

At best, the incorporation of section 571.003 into section 321.001
(footnote: 27) sewed ambiguity into the statute.
  But in cases like this, we require the Legislature to express its intent beyond doubt and will construe ambiguities in a manner that retains the State’s immunity. . . .  The statute’s ambiguity precludes our finding an unmistakable Legislative intent to waive sovereign immunity.
(footnote: 28)

Likewise, the water code’s incorporation of the definition of “person” from section 311.005 of the government code does not waive the City’s immunity beyond doubt.  The water code’s provisions undoubtedly apply to private individuals and entities, so they are not without meaning or purpose if they are construed against waiver.  Moreover, the incorporation of section 311.005 of the government code into the water code creates an ambiguity.
(footnote: 29)  In such a case, we must construe any ambiguities in a manner that retains the City’s immunity.
(footnote: 30)  The water code’s ambiguity with regard to the use of “person” precludes our finding “an unmistakable legislative intent to waive immunity.”
(footnote: 31)
 The third factor we must consider is whether the statute requires the governmental entity to be joined in the lawsuit.
(footnote: 32)  Nothing in chapter 11 of the water code requires the government to be joined in a lawsuit for a water code violation arising out of the alleged diversion of surface waters onto a person’s property.
(footnote: 33)  The lack of such a requirement is yet another indication that the Legislature did not intend to waive immunity simply by incorporating the government code’s definition of person into water code section 11.086.
(footnote: 34)
 The final factor we consider is whether the statute provides an objective limitation on the State’s potential liability.
(footnote: 35)  When the Legislature waives immunity, it generally includes in the statute a measure designed to protect the public treasury from the consequences of the waiver.
(footnote: 36)  Chapter 11 of the water code contains no such provision.  Therefore, the fact that the Wilsons’ construction of the water code would subject the City to indeterminate damages awards without limitation reinforces our conclusion that the Legislature did not intend to waive sovereign immunity by mere implication.
(footnote: 37)
 For all of these reasons, we hold that the Legislature’s incorporation of 
the definition of “person” from government code
 section 311.005 into the water code
 does not constitute a clear and unambiguous waiver of immunity from suit for a violation of water code section 11.086(a).
(footnote: 38) 

B.  Waiver of Sovereign Immunity by Praying for Costs and Attorney’s Fees

The Wilsons contend that, even if the Legislature did not waive the City’s immunity from suit in the water code itself, the City waived its immunity by requesting in the prayer of its answer that it “recover its costs and attorney’s fees, as well as any other relief, at law and equity, to which it is justly entitled.” 

Recently, in
 Reata Construction Corp. v. City of Dallas,
 the supreme court held that a city can waive its immunity from suit if it “has joined into the litigation process by asserting its own affirmative claims for monetary relief.”
(footnote: 39)  In that situation, the municipality “leave[s] its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to the claims the City asserts.”
(footnote: 40)  To qualify as a claim for affirmative relief, the supreme court has held that a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff’s claim, on which the defendant could recover benefits, compensation, or relief, even though the plaintiff may abandon his cause of action or fail to establish it.
(footnote: 41)
 In this case, the City’s defensive pleadings do not urge a counterclaim against the Wilsons.  Nor has the City asserted a cause of action, independent of the Wilsons’ water code claim, on which it could obtain relief even if the Wilsons abandoned or failed to establish their claim.  Unlike a defensive claim for attorney’s fees in a declaratory judgment action, the City’s prayer for attorney’s fees has no basis in a statute, a common-law theory of recovery or an equitable claim for relief, and it would not be sufficient to support recovery of attorney’s fees if the Wilsons’ claim were nonsuited or dismissed.
(footnote: 42)  Therefore, we hold that the City did not waive its sovereign immunity from suit by including in its defensive pleading a prayer for costs and attorney’s fees.

VI.  Conclusion

Because the Legislature did not waive the City’s immunity from suit for the Wilsons’ water code violation claim, and because the City did not waive its immunity by requesting costs and attorney’s fees in the prayer of its defensive pleading, we hold that the trial court lacked subject matter jurisdiction over the Wilsons’ water code violation claim.  Therefore, we vacate the trial court’s judgment for the Wilsons on their water code violation claim and dismiss that claim.
(footnote: 43)

JOHN CAYCE

CHIEF JUSTICE

EN BANC

LIVINGSTON, J. filed a concurring and dissenting opinion in which

DAUPHINOT, J. joined.

WALKER, J. filed a dissenting opinion in which MCCOY, J. joined. 

DELIVERED:   March 1, 2007

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-00-183-CV

THE CITY OF KELLER APPELLANT

V.

JOHN W. WILSON, GRACE S. WILSON, APPELLEES

JOHNNY L. WILSON, AND NANCY A. WILSON

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING AND DISSENTING OPINION ON

REMAND AND ON REHEARING EN BANC

------------

I respectfully concur and dissent to the majority opinion for four reasons.

First, this court is being asked to entertain a plea to the jurisdiction on remand from the Texas Supreme Court.  This is the first time that the City of Keller has actually asked this case to be dismissed due to a lack of jurisdiction despite the case having been tried to a jury, appealed to this court, and reviewed in the supreme court.  This case has been pending for over six years and only on remand from the supreme court did the City pursue its plea as to this claim.
(footnote: 1)  

While we are required to sua sponte determine our own jurisdiction and that of the trial court, it is difficult to see the equity in the City’s pursuit of the issue at this late date.  Parties and courts should determine jurisdiction at the earliest possible moment to prevent or limit waste of judicial resources and the expense of unnecessary litigation.  
See Tex. Dep’t of Parks & Wildlife v. Miranda
, 133 S.W.3d 217, 226 (Tex. 2004); 
City of Kemah v. Vela
, 149 S.W.3d 199, 202 (Tex. App.—Houston [14th
 Dist.] 2004, pet. denied).  We are being asked to rule today on an issue that the trial court never ruled upon.  Usually, this would preclude appellate review of such a complaint.  
See
 
Tex. R. App. P.
 33.1(a); 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  However, because lack of jurisdiction relates to fundamental error, we are required to address it, even now.  
See Wal-Mart Stores, Inc. v. Alexander,
 868 S.W.2d 322, 328 (Tex. 1993).  

Moreover, had the City urged this issue in the trial court originally, the Wilsons would have been afforded an opportunity to replead in order to more clearly assert additional jurisdictional facts and theories.  
See Miranda, 
133 S.W.3d at 226-27; 
Hammons v. City of Krugerville
, No. 02-04-00353-CV, 2005 WL 2838602, at *1 (Tex. App.—Fort Worth Oct. 27, 2005, pet. denied) (mem. op.); 
see also Cronen v. Ray
, Nos. 14-05-00788-CV, 14-05-00789-CV, 2006 WL 2547989, at *3 (Tex. App.—Houston [14th
 Dist.] Sept. 5, 2006, no pet. h.).

Subject matter jurisdiction cannot be conferred by waiver or estoppel at any stage of a proceeding.  
Juarez v. Tex. Ass’n of Sporting Officials
, 172 S.W.3d 274, 278 (Tex. App.—El Paso 2005, no pet.).
  
Generally, one may not assert estoppel against a city where such would interfere with a city’s performance of a governmental function.  
City of White Settlement v. Super Wash, Inc.
, 198 S.W.3d 770, 773-74 (Tex. 2006).  However, the Texas Supreme Court acknowledged that it has recognized a very limited exception to this rule “where justice requires its application, and there is no interference with the exercise of [a city’s] governmental functions.”  
Id. 
at 774 (citing 
City of Hutchins v. Prasifka, 
450 S.W.2d 829, 836 (Tex. 1970)); 
City of Dallas v. Rosenthal, 
239 S.W.2d 636, 646 (Tex. Civ. App.—Dallas 1951, writ ref’d n.r.e.). 
 Estoppel may be asserted against a city when “justice requires” and claimants might otherwise be completely denied relief.  
Super Wash,
 198 S.W.3d at 775.  

Here, the Wilsons will be denied the judgment the jury rendered in their favor, i.e., all relief, if the City’s late pursuit of its jurisdictional challenge is granted.  Further, the Wilsons have been denied their right to replead their jurisdictional basis because of the City’s delay and failure to timely pursue its jurisdictional challenges in the trial court.  The majority opinion accepts this result even though a timely raised jurisdictional challenge would have afforded the Wilsons the opportunity to replead. While I acknowledge we cannot establish a court’s jurisdiction by estoppel, we could estop the City from complaining should we allow the Wilsons the opportunity to replead and have the case retried, if necessary.  When we apply the dictates of 
Super Wash
, we can see that there is no interference with the City’s governmental functions by estopping the City from this type of procedural complaint. 

Second, I believe that the majority opinion overstates the immunity a municipality has for its governmental functions.  The majority says that a municipality is immune from suit for torts committed in the performance of governmental functions, citing the supreme court’s recent opinion of 
Tooke v. City of Mexia.
  197 S.W.3d 325, 343 (Tex. 2006).  Under the common law, this would have been a correct blanket statement.  
City of Tyler v. Likes
, 962 S.W.2d 489, 501 (Tex. 1997).  But under the current Texas Tort Claims Act, section 101.0215 provides for a limited waiver of a municipality’s immunity from liability for damages arising from its governmental functions up to the damages caps if the cause of action arises from conduct that otherwise falls within the classes of waiver of immunity authorized by the Act.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.0215(a) (Vernon 2005); 
McKinney v. City of Gainesville
, 814 S.W.2d 862, 865 (Tex. App.—Fort Worth 1991, no writ).  Therefore, if the alleged conduct falls within a governmental function category, we must then look to see whether the conduct alleged also falls within one of the other provisions of chapter 101 that waives immunity.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 101.021-.022 (Vernon 2005 & Supp. 2006); 
Miranda, 
133 S.W.3d at 225
; 
City of Fort Worth v. Gay
, 977 S.W.2d 814, 817 (Tex. App.—Fort Worth 1998, no pet.)
; 
McKinney, 
814 S.W.2d 
at 865
.  

Restated, a municipality 
waives
 its immunity from liability, up to the caps,  for “damages arising from its governmental functions” 
if
 that conduct otherwise falls within the Texas Tort Claims Act.  
Vela
, 149 S.W.3d at 203 n.1; 
see Martinez v. City of San Antonio
, No. 04-05-00775-CV, 2006 WL 3497250, at *5 (Tex. App.—San Antonio Dec. 6, 2006, no pet.); 
Pakdimounivong v. City of Arlington
, No. 02-05-00414-CV, 2006 WL 3438218, at *4(Tex. App.—Fort Worth Nov. 30, 2006, no pet. h.); 
McKinney
, 814 S.W.2d at 865.  Additionally, we know that section 101.025 of the Act waives sovereign immunity from suit—including governmental immunity from suit—to the extent liability is waived under chapter 101.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.025.  Therefore, should we determine that liability exists for some governmental function conduct then, in that event, immunity from suit would also be waived.  
See id.; Miranda
 133 S.W.3d at 224.

Third, I do not agree that the amendment to section 311.034 of the code construction act applies to this case as claimed by the majority opinion.  
Tex. Gov’t Code Ann.
 § 311.034 (Vernon Supp. 2006).  That provision, which states that “a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language,” was not effective until June 2001; the judgment in this case was entered in March 2000, well before the statute’s effective date. Thus, I believe we should apply the common law standard espoused in 
City of La Porte v. Barfield.
  898 S.W.2d 288, 291 (Tex. 1995) (holding similarly that we look to whether the language waiving governmental immunity is clear and unambiguous, in light of legislative intent).

Lastly, I do not agree with all of the majority’s analysis on each of the 
Wichita Falls State Hospital v. Taylor 
factors we are to apply in trying to determine if the legislature intended for a statute—here, the water code—to waive governmental immunity.  106 S.W.3d 692, 697-98 (Tex. 2003).  

The third 
Taylor 
factor asks whether the statute involved requires the government to be joined in the litigation. 
 106 S.W.3d at 697-98.  The majority says that because the water code does not 
require
 the City to be joined, this factor weighs against waiver of immunity.  However, this begs the question because in this case the City 
is
 the actual owner of the easement.  The easement was granted to the City in 1997; thus, the City was a necessary and indispensable party at the time the Wilsons filed suit.  
Tex. R. Civ. P.
 39(a).  Therefore, I believe this factor weighs in the Wilsons’ favor.

Likewise, I disagree with the majority’s analysis of the fourth 
Taylor
 factor:  whether the water code provides an objective limitation on the governmental unit’s potential liability.  
Taylor
, 106 S.W.3d at 698.  The majority concludes that this factor weighs against the Wilsons because the water code itself contains no limitation on potential liability for the City.  
See
 
Tex. Water Code Ann
. §§ 1.001-222.031 (Vernon 2000, 2002, 2004 & Supp. 2006). I agree that the water code itself contains no limitation on damages.  However, because the City relies on the Tort Claims Act in asserting that the Wilsons’ cause of action involves a “governmental function,” specifically “sanitary and storm sewers” under section 101.0215(a)(9) of the Tort Claims Act, and because the cause of action is one sounding in tort, we should use and apply the caps of the Act itself to limit the damages.  
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 101.0215(a)(9), 101.023(c) (capping monetary damages against municipality).  Therefore, I would conclude that this factor weighs in favor of the Wilsons.

I believe the majority is correct in looking at the late-pursued immunity and jurisdictional issue, however, I also believe we should allow the Wilsons an opportunity to replead their water code cause of action.  While this quite necessarily may require a retrial of this cause of action, I believe the interests of justice demand it and that the City should be estopped from contesting the Wilsons’ right to pursue it.  For all of these reasons, I respectfully concur and dissent with the majority opinion.

TERRIE LIVINGSTON

JUSTICE

DELIVERED:
 March 1, 2007

DAUPHINOT, J. joins in this concurring and dissenting opinion. 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-00-183-CV

THE CITY OF KELLER APPELLANT

V.

JOHN W. WILSON, APPELLEES

GRACE S. WILSON,

JOHNNY L. WILSON, AND 

NANCY A. WILSON

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING OPINION ON REMAND AND 

ON REHEARING EN BANC
 

------------

I respectfully dissent.  I would deny the City of Keller’s motion for rehearing.

This case was filed in 1996, tried in 2000, affirmed on appeal by this court in 2002,
(footnote: 1)  and reversed by the supreme court in 2005.
(footnote: 2)  Despite traveling through three Texas courts for over nine years, the City of Keller never sought a ruling from any of these courts that it possessed governmental immunity from the Wilsons’ water-code-violation claim.  Only after the supreme court issued its mandate and remanded the case to us did the City of Keller decide to raise the issue of governmental immunity.
(footnote: 3)  In 2006, we issued an opinion on remand that did not address the governmental immunity claim raised by the City of Keller because the issue was raised on remand to this court for the first time via supplemental briefing, which we denied leave to file.
(footnote: 4)  Because I believe that the City of Keller’s effort to raise this issue on remand comes too late and because I believe that the supreme court’s mandate precludes us from addressing this issue, I dissent.

While typically a lack of subject matter jurisdiction may be raised at any time, logic dictates that some outer limit must exist to this proposition of law.
(footnote: 5) Clearly, the Legislature intended that the issues of governmental immunity and subject matter jurisdiction be finally resolved prior to trial.  That is why the Legislature statutorily authorized interlocutory appeals of these issues.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 51.014(a)(5), (8) (Vernon Supp. 2006).  The City of Keller pleaded governmental immunity in 1996, but then sat on its rights, never seeking a ruling on the issue until now.  
The issue of the City 
of Keller
’s now-alleged governmental immunity from the Wilsons’ water-code-violation claim should have been resolved approximately seven years ago in the trial court before this claim was submitted to the jury.  Or, it should have been raised as an issue in the appeal perfected in our court.
(footnote: 6)  Or, it should have been raised as a conditional issue in the City 
of Keller
’s petition for review in the supreme court.
(footnote: 7)  Or, it should have been raised in a motion for rehearing in the supreme court.
(footnote: 8)  Or, it should have been raised in a motion to recall the supreme court’s mandate.
(footnote: 9)  It was not.
(footnote: 10)
 Despite multiple opportunities to raise the issue of governmental immunity at multiple junctures in this litigation, the City of Keller waited until after the supreme court issued its mandate to seek a ruling on its alleged governmental immunity from the Wilsons’ water-code-violation claim.
  The 
supreme court’s mandate remanding this case to our court orders us to consider on remand “the other issues raised on appeal.”
(footnote: 11)  Because the City of Keller’s purported governmental immunity from the Wilsons’ water-code-violation claim was not raised in the trial court, was not raised as an issue in this court, was not raised as a conditional issue in the supreme court, was not raised in a motion for rehearing in the supreme court, and was not raised in a motion to recall the supreme court’s mandate, at this point in time, it is not and can never be an “other issue raised on appeal.”  
It was not raised.  We have no power to exceed the scope of the supreme court’s mandate.  
See, e.g.
, 
Tex. Workers’ Comp. Ins. Fund v. Mandlbauer
, 34 S.W.3d 909, 911-12 (Tex. 2000); 
Fletcher v. Blair
, 874 S.W.2d 83, 87 n.1 (Tex. App.—Austin 1994, writ denied); 
accord Harris County Children’s Protective Servs. v. Olvera, 
77 S.W.3d 336, 340 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)  
(holding trial court cannot exceed scope of appellate court mandate by addressing issues not set forth in mandate)
; Kahn v. Seely
, 37 S.W.3d 86, 88 (Tex. App.—San Antonio 2000, no pet.) (same); 
Owens v. Lubbock ISD
, 237 S.W.2d 711, 712 (Tex. Civ. App.—Amarillo 1950, writ ref’d n.r.e.) (same).  Because the supreme court’s mandate instructs us to address only the “other issues raised on appeal” and because the issue of the City of Keller’s alleged governmental immunity from suit for the Wilsons’ water-code-violation claim is not one of the “other issues raised on appeal,” it falls outside the scope of the supreme court’s mandate to this court. For these reasons, I would deny the City of Keller’s motion for rehearing.  

SUE WALKER

JUSTICE

MCCOY, J. joins in this dissenting opinion.

DELIVERED:  March 1, 2007

FOOTNOTES
1:
City of Keller v. Wilson,
 168 S.W.3d 802, 830 (Tex. 2005).

2:
See
 
Tex. Water Code Ann.
 § 11.086(a) (Vernon 2000) (“No person may divert or impound the natural flow of surface waters in this state . . . in a manner that damages the property of another by the overflow of the water diverted or impounded.”).  The jury found for the Wilsons on their causes of action for both inverse condemnation and water code violations, and the Wilsons elected to recover on their inverse condemnation claim.  On original submission, we did not address the City’s issue challenging the water code violation finding because, with one justice dissenting, we upheld the jury’s inverse condemnation finding.  
See City of Keller v. Wilson
, 86 S.W.3d 693, 709 (Tex. App.—Fort Worth 2002), 
rev’d
, 168 S.W.3d 802 (Tex. 2005).

3:
City of Keller v. Wilson,
 No. 02-00-00183-CV, 2006 WL 1716130, at *7 (Tex. App.—Fort Worth June 22, 2006, no pet. h.) (op. on reh’g); 
see
 
Tex. Water Code Ann.
 § 11.086(a)–(b).

4:
The City also raised this issue in a supplemental appellant’s brief tendered before submission of this case on remand. 

5:
Tex. Water Code Ann.
 § 11.086(a)–(b).

6:
Tex. Dep’t of Parks & Wildlife v. Miranda,
 
133 S.W.3d 217, 224 (Tex. 2004).

7:
Tooke v. City of Mexia,
 197 S.W.3d 325, 343 (Tex. 2006).  The City’s design of the drainage facility that affected the Wilson property was a governmental function.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.0215(a)(9) (Vernon 2005) (including “sanitary and storm sewers” among a municipality’s governmental functions for purposes of tort liability); 
PKG Contracting, Inc. v. City of Mesquite,
 197 S.W.3d 388, 388-89 (Tex. 2006) (holding that the City was acting in its governmental capacity when it contracted to construct a storm drainage system); 
City of Tyler v. Likes,
 
962 S.W.2d 489, 501 (Tex. 1997)
 (holding that a city’s design and 
planning of its culvert system are quasi-judicial functions subject to governmental immunity).

8:
Tex. Nat. Resource Comm’n v. 
IT-Davy,
 
74 S.W.3d 849, 855 (Tex. 2002)
.

9:
Waco ISD v. Gibson,
 
22 S.W.3d 849, 851 (Tex. 2000)
.

10:
Id.; Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
 
852 S.W.2d 440, 445 (Tex. 1993).

11:
IT-Davy,
 
74 S.W.3d at 855
.

12:
See Tex. Dep’t of Transp. v. Garza,
 70 S.W.3d 802, 803, 808 (Tex. 2002) (dismissing case because trial court lacked subject matter jurisdiction).

13:
Wichita Falls State Hosp. v. Taylor,
 
106 S.W.3d 692, 696 (Tex. 2003)
; 
City of LaPorte v. Barfield,
 
898 S.W.2d 288, 291 (Tex. 1995)
.

14:
Tex. Gov’t Code Ann.
 § 311.034 (Vernon Supp. 2006).

15:
See, e.g.,
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.025(a) (Vernon 2005) (“Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.”); 
id.
 § 63.007(b) (Vernon Supp. 2006) (“The state’s sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section.”); 
id.
 § 81.010(d) (Vernon 2005) (“Governmental immunity to suit is waived and abolished only to the extent of the liability created by Subsection (b).”);  
Tex. Gov’t Code Ann.
 § 2007.004 (Vernon 2000) (“Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter.”); 
Tex. Prop. Code Ann.
 § 74.506(c)  (Vernon Supp. 2006) (“The state’s immunity from suit without consent is abolished with respect to suits brought under this section.”).

16:
Wichita Falls State Hosp.,
 106 S.W.3d at 697
.  

17:
Id.
  For example, the supreme court has found waiver when the provision in question would be meaningless unless immunity was waived.  
See Kerrville State Hosp. v. Fernandez,
 
28 S.W.3d 1, 8 (Tex. 2000)
.

18:
Wichita Falls State Hosp.,
 106 S.W.3d at 697
; 
see Magnolia Petro. Co. v. Walker,
 125 Tex. 430, 83 S.W.2d 929, 934 (Tex.) (stating that ambiguities in the terms of a legislative grant of a right or privilege by the State must be construed in favor of the State), 
cert. denied,
 296 U.S. 623 (1935).

19:
Wichita Falls State Hosp.,
 106 S.W.3d at 697
-98.

20:
Id.
 at 698; 
see IT-Davy,
 
74 S.W.3d at 854 
(noting that “[s]ubjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments”).

21:
See, e.g., Kerrville State Hosp.,
 28 S.W.3d at 9-10 (limiting damages to those authorized by the Texas Tort Claims Act); 
Barfield,
 898 S.W.2d at 299 (same); 
Tex. Educ. Agency v. Leeper,
 893 S.W.2d 432, 446 (Tex. 1994) (finding a waiver for attorney’s fees only).

22:
See
 
Tex. Water Code Ann.
 § 1.002(a) (Vernon 2000) (providing that “[t]he Code Construction Act (Chapter 311, Government Code) applies to each provision of this code”).

23:
Tex. Gov’t Code Ann.
 § 311.005(2) (Vernon 2005).

24:
Wichita Falls State Hosp.,
 106 S.W.3d at 699-700; 
see also Duhart v. State,
 610 S.W.2d 740, 742-43 (Tex. 1980) (holding that the Legislature’s incorporation of a Workers’ Compensation Act provision preserving a private employee’s cause of action for exemplary damages into a statute providing compensation benefits for state highway department employees did not clearly and unambiguously waive the State’s immunity from suit for such damages).

25:
See
 
Wichita Falls State Hosp.,
 106 S.W.3d at 698-700 (concluding that the Legislature did not waive sovereign immunity from suits based on alleged violations of the “patient’s bill of rights” found in chapter 321 of the health and safety code); 
accord Tex. Dep’t of Mental Health & Mental Retardation v. Lee,
 38 S.W.3d 862, 870-71 (Tex. App.—Fort Worth 2001, pet. denied) (holding same).

26:
See
 
Tex. Health & Safety Code Ann.
 § 321.003 (Vernon 2001); 
id.
 § 321.001(4) (“‘Mental health facility’ has the meaning assigned by Section 571.003.”); 
id.
 § 571.003(12) (Vernon Supp. 2006) (“‘Mental health facility’” means: (A) an inpatient or outpatient mental health facility operated by the [Texas Department of Mental Health and Mental Retardation], a federal agency, a political subdivision, or any person[.]”).

27:
Section 321.001 is the “Definitions” section of chapter 321 of the  health and safety code.

28:
Wichita Falls State Hosp.,
 106 S.W.3d at 701 (citations omitted).  In contrast, the supreme court has stated that the Wrongful Death Act waives sovereign immunity because it provides that “
[a] person is liable
 for damages arising from an injury that causes an individual’s death,” and the statute itself defines “person” to include some governmental entities rather than incorporating a definition from another statute.  
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 71.001(1)–(2), .002(b) (Vernon Supp. 2006) (emphasis supplied); 
see Barfield,
 898 S.W.2d at 296
.

29:
See Wichita Falls State Hosp.,
 106 S.W.3d at 701.  

30:
See id; see also Magnolia Petro. Co.,
 83 S.W.2d at 934 (“Legislative grants of property, rights, or privileges must be construed strictly in favor of the state . . . and whatever is not unequivocally granted in clear and explicit terms is withheld.  Any ambiguity or obscurity in the terms of the statute must operate in favor of the state.”).  
If anything, section 11.086 is
 even more ambiguous than section 321.003 of the health and safety code.  Section 321.003 provides that “
[a] . . . mental health facility
 that violates [the patient’s bill of rights found in chapter 321] . . . 
is liable
 to a person receiving care or treatment in or from the facility who is harmed as a result of the violation.”
  
Tex. Health & Safety Code Ann.
 § 321.003(a) (emphasis supplied).  
In contrast, section 11.086 of the water code merely provides that “no person may divert . . . the natural flow of surface waters . . . in a manner that damages the property of another”; it does not state that such a person “is liable” for the diversion.
  
Tex. Water Code Ann.
 § 11.086(a).  Both the health and safety code and the water code provide that a person who is injured as a result of a violation of the respective statutes may recover damages.  
Tex. Health & Safety Code Ann.
 § 321.003(b); 
Tex. Water Code Ann.
 § 11.086(b).

31:
Wichita Falls State Hosp.,
 106 S.W.3d at 701.  This conclusion is further supported by the fact that, 
after the underlying lawsuit was filed, in 2001 the Legislature added section 311.034 to the Code Construction Act, which provides in pertinent part that “the use of ‘person,’ as defined by Section 311.005 [of the government code] to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.”
  
Tex. Gov’t Code Ann.
 § 311.034.

32:
Wichita Falls State Hosp.
, 106 S.W.3d at 697-98.

33:
See
 
Tex. Water Code Ann.
 §§ 11.081–.097 (Vernon 2000 & Supp. 2006).  
Compare Leeper,
 893 S.W.2d at 446 (holding that sovereign immunity was waived under section 37.006 of the Declaratory Judgments Act because the Legislature required that municipalities must be joined in suits construing their legislative pronouncements and provided that they would be bound by any resulting judgments).

34:
Wichita Falls State Hosp.,
 106 S.W.3d at 697-98, 701.

35:
Id.
 at 698.

36:
Id.
 at 701; 
see, e.g.,
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.023(c) (Vernon 2005) (“Liability of a municipality under this chapter is limited to money damages in a maximum amount of . . . $100,000 for each single occurrence for injury to or destruction of property.”); 
id.
 § 81.010(b) (providing that a patient may obtain only an order requiring the governmental unit to discharge the mental health services provider who committed the conduct, court costs, and attorney’s fees); 
Tex. Gov’t Code Ann.
 § 2007.023(b) (Vernon 2000) (“[T]he governmental entity is only liable for[] invalidation of the governmental action or the part of the governmental action resulting in the taking.”); 
id.
 § 554.003(c) (Vernon 2004) (“[A] public employee may not recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount that exceeds [the amounts set by statute].”).

37:
See
 
Wichita Falls State Hosp.,
 106 S.W.3d at 702.

38:
For the reasons discussed in the preceding parts of this opinion, we decline to follow the Dallas Court of Appeals’ holding to the contrary in 
Abbott v. City of Princeton,
 721 S.W.2d 872, 876 (Tex. App.—Dallas 1986, writ ref’d n.r.e.), 
disapproved on other grounds, Schneider Nat’l Carriers, Inc. v. Bates,
 147 S.W.3d 264, 281 (Tex. 2004).  
Abbott
 did not apply the clear and unambiguous standard adopted by the supreme court and codified by the Legislature in the Code Construction Act.  We also note that 
Abbott
 and 
Thomas v. Hale County,
 531 S.W.2d 213, 215 (Tex. Civ. App.—Amarillo 1975, no writ), on which the Wilsons rely, are inapposite because they focused on whether the governmental entities at issue were “persons” for purposes of section 11.086 and its predecessor, not specifically on whether the Legislature had waived the entities’ sovereign immunity from suit.

39:
197 S.W.3d 371, 376 (Tex. 2006) (op. on reh’g).

40:
Id.
 at 377.

41:
BHP Petro. Co. v. Millard
, 800 S.W.2d 838, 841 (Tex. 1990).  This definition of a claim for affirmative relief has its origin in the law of non-suit, but it has been adopted by courts applying 
Reata’s
 rule concerning waiver of immunity.  
See, e.g.,
 
Nat’l Enter., Inc. v. E.N.E. Props.
, 167 S.W.3d 39, 43 (Tex. App.—Waco 2005, no pet.) (“A claim for affirmative relief is stated if the counterclaim alleges a cause of action independent of the plaintiff’s claim.”); 
Ray Ferguson Interests, Inc. v. Harris County Sports & Convention Corp.
, 169 S.W.3d 18, 23 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (“To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff’s claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.”).

42:
See
 
Dequire v. City of Dallas
, 192 S.W.3d 663, 666-67 (Tex. App.—Dallas 2006, no pet.) (holding that defendant’s prayer for attorney’s fees asserted in response to a plaintiff’s declaratory judgment claim is a claim for affirmative relief within the meaning of 
Reata
); 
Town of Flower Mound v. Upper Trinity Reg’l Water Dist.,
 178 S.W.3d 841, 844 (Tex. App.—Fort Worth 2005, no pet.) (holding that defensive claim for attorney’s fees under the Declaratory Judgments Act is a separate cause of action that may be asserted independently, separate and apart from the plaintiff’s request for declaratory judgment);
 see generally
 
Tex. Civ. Prac. & Rem Code Ann
. § 37.009 (Vernon 1997) (“In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney’s fees as are equitable and just.”).

43:
Tex. R. App. P.
 43.2(e).  There are no other claims pending in this appeal, because the supreme court has rendered judgment against the Wilsons on inverse condemnation, their only other claim against the City.  
City of Keller,
 168 S.W.3d at 830.

1:
The City did plead immunity in its answer, but no hearing was held or order entered on its jurisdictional claims.

1:
City of Keller v. Wilson
, 86 S.W.3d 693 (Tex. App.—Fort Worth 2002), 
rev’d
, 
168 S.W.3d 802
 (Tex. 2005)
. 

2:
City of Keller v. Wilson
, 168 S.W.3d 802 (Tex. 2005). 

3:
The City of Keller was previously represented by different counsel.

4:
City of Keller v. Wilson
, No. 02-00-00183-CV, 2006 WL 1716130, at *7 (Tex. App.—Fort Worth June 22, 2006, no pet. h.) (op. on remand).

5:
The majority does not cite any case holding that the issue of governmental immunity can be raised for the first time after mandate has issued from a state’s high court.

6:
See
 
Tex. R. App. P.
 38.1(e).

7:
See
 
Tex. R. App. P.
 53.2(f), 53.4. 

8:
See
 
Tex. R. App. P.
 53.4.

9:
See
 
Tex. R. App. P.
 18.7; 
O'Neil v. Mack Trucks, Inc.
, 551 S.W.2d 32, 32 (Tex. 1977).  

10:
A post-submission brief filed by the City of Keller in the supreme court mentioned governmental immunity in the context of inverse condemnation, but it did not seek relief on the theory that any court lacked jurisdiction on any claim based on governmental immunity and sought only the relief prayed for in the City of Keller’s brief on the merits.

11:
Likewise, the supreme court’s opinion simply instructs us to address the “jury’s alternate verdict for the Wilsons on a claim under the Texas Water Code.”  
City of Keller, 
168 S.W.3d at 
830.
  

COMMENTS AND ANNOTATIONS
Comment 1:
MAJORITY BY CAYCE; CONCUR AND DISSENT BY LIVINGSTON; DISSENT BY WALKER