

## NUMBER 13-11-00196-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**TIM P. DITTMAN AND DEBBIE L. DITTMAN,**        **Appellants,**

**v.**

**ANTHONY A. CERONE AND OOTZIE PROPERTIES – HOU, LLC FORMERLY NAMED OOTZIE OF TEXAS, LLC,**        **Appellees.**

---

### On appeal from the 80th District Court of Harris County, Texas.

---

## MEMORANDUM OPINION ON REHEARING

### Before Justices Rodriguez, Garza and Benavides
### Memorandum Opinion On Rehearing by Justice Benavides

We grant the appellants' motion for rehearing, withdraw our opinion and judgment

dated March 7, 2013, and issue this memorandum opinion on rehearing.

This case involves an option contract for the sale of property in Harris County. Appellants Tim and Debbie L. Dittman contend the trial court erred when it ordered that the Dittmans sell one of their properties to appellees Anthony Cerone and Ootzie Properties—Hou, LLC, formerly named Ootzie of Texas, LLC. By eighteen issues, the Dittmans argue that the trial court's ruling violates basic tenets of contract law by construing certain e-mail messages as one contract. They also contend the trial court's ruling violates the statute of frauds, the Texas Family Code, and the statute of conveyances. Finally, the Dittmans argue that the trial court erred in finding fraud and denying their affirmative defense. We affirm.

## I. BACKGROUND

Tim and Debbie Dittman owned a piece of property totaling nearly 3.78 acres in Seabrook, Harris County, Texas. This property contained horse stables and is referred to by all parties as the "Stable Property." The Dittmans also owned an approximately seventeen-acre piece of land adjacent to the Stable Property. Immediately next to the Dittmans' seventeen-acre property existed another nearly seventeen-acre parcel owned by Joe Baccus and Vicki Rihm.

In 2006, the Dittmans, Baccus, and Rihm decided to market their respective seventeen-acre properties as a single parcel totaling approximately thirty-four acres. This thirty-four acre property is referred to as the "Pasture Property." The Dittmans, Baccus, and Rihm listed the Pasture Property with real estate broker David Lee in July 2007. Lee was a real estate broker with Transwestern. Cerone, who lives in New Jersey and works in Pennsylvania but owns a transportation company in Houston,

2

Texas, contacted Lee regarding the Pasture Property. Cerone was looking for property to expand his Houston company, Ootzie of Texas, LLC. Cerone and Lee exchanged several e-mail messages and phone calls regarding the Pasture Property; in the midst of these exchanges, Cerone learned about the Dittmans' Stable Property, as well. Cerone expressed interest in the Stable Property, even though it was not for sale.

Cerone visited the Pasture Property on October 11, 2007. The next day, Cerone signed an earnest money contract to purchase the Pasture Property from the Dittmans, Baccus, and Rihm. The earnest money contract set forth, among other things, that Cerone would: (1) pay $2.65 per square foot on the Pasture Property; (2) close within 60 days; and (3) pay $100,000 of non-refundable earnest money for the right to terminate prior to the closing date. After signing the earnest money contract, Cerone asked Lee about the Stable Property again. Lee responded by e-mail that the Dittmans were not interested in selling the Stable Property at the time but could offer him a "right of first refusal." The parties, however, never signed a document granting Cerone a right of first refusal.

One week later, Stewart Title Company issued a title showing several recorded oil and gas leases on the Pasture Property. Cerone sought the advice of an oil and gas attorney regarding these leases, and was informed that removing the oil and gas leases would cost approximately $50,000 to $200,000 in payments to lease holders, not including attorney's fees. Cerone asked the Dittmans, Baccus, and Rihm to lower their asking price to cover these costs. The sellers refused.

Later, the sellers agreed to lower the asking price of $2.65 per square foot to

3

$2.50 per square foot on the Pasture Property, if Cerone agreed to close on the Pasture Property within thirty days instead of sixty.    Cerone continued to ask for concessions because of the possible expense to handle the oil and gas leases, and he asked for an option contract to buy the Stable Property.    The following e-mails were exchanged:

**E-mail # 1:**

From:            David Lee
Sent:            Tuesday, October 30, 2007 4:32 PM
To:              Anthony Cerone
Subject:         Stable Property
Importance:      High

Anthony, I was able to confirm with Tim and Debbie Dittman that they will agree to a 2 year option at $2.75 s.f. on the 3.78 acre tract.   As-is.   This is subject to you closing on the 35 acre tract tomorrow.

In addition, he is prepared to lease the 35 acre tract for that same period for $300 per month plus he will carry necessary insurance.

Anthony, in my professional opinion, the Dittmans just put over $200,000 on the table that is available to you today should you decide to flip the property.   They perceive this to be a big concession.

Tim and Debbie were planning to list the property with me and I was attaching a $5.00 s.f. asking price hoping to achieve $4.00 s.f.

David

**E-mail # 2:**

From:            David Lee
Sent:            Wednesday, October 31, 2007 9:56 AM
To:              Anthony Cerone
Subject:         Bayport Property

Good Morning Anthony:

Contrary to your instructions to Stewart Title Company to revise the paperwork to reflect a $125,000 price reduction (which had not even been presented to the sellers for consideration), throughout the late afternoon

and early evening my client's [sic] debated and considered the totality of the deal on the table. They have decided they will not revise the price from the agreed $2.50 s.f. number.

Each of them will be traveling to the title company later this morning to sign necessary documentation for the closing to take place today. Cynthia Haggard can e-mail you documentation for your signature today. Sufficient funds will need to be wired today.

We can work immediately thereafter to prepare the necessary material to reflect the agreement reached in principal [sic] yesterday concerning the 2 year option on the 3.7 +/- acre stable property at $2.75 s.f. plus the 2 year lease on the 34.59 acre property at $300 per month, including necessary insurance protection.

If the closing does not take place today then the original contract remains in effect should you choose to keep it in effect.

It would be helpful to have an understanding as to your intentions today. One or more of the sellers will be leaving town tomorrow and won't be available for the next week.

Sincerely,
David

**E-mail # 3:**

From:       1shasta2 [Debbie Dittman]
Sent:       Wednesday, October 31, 2007 2:35 PM
To:         David Lee
Subject:    Seabrook

Hi David,

Tim and I wanted to let you know that we are working on getting the following agreements ready for Mr. Cerone's review.

The first will be the Lease Agreement for the 34.59 acres. The term is to be a twenty-four (24) month period at the rate of $300.00 per month.

The second will be the twenty-four (24) month option to purchase the 3.78 acre tract of ours in Seabrook at $2.75 p.s.f.

We will keep you posted on the progress of both items and please pass along to Mr. Cerone that we wish to get these executed as soon as possible.

Thanks,
Debbie

Cerone accepted the Dittmans' offer of a two-year option to purchase the Stable Property for $2.75 per square foot and agreed not to terminate the Pasture Property contract. He closed on the Pasture Property on October 31, 2007, and wired the appropriate funds that same day.

At or near the same time as the closing, the City of Seabrook (where both the Pasture Property and Stable Property were located) and the Port of Houston Authority settled a long-standing lawsuit. It was commonly believed that this settlement would have a positive effect on the value of commercial properties in the Bayport Terminal Area.

In November 2007, Cerone attempted to exercise his option to purchase the Stable Property. The Dittmans, through an attorney, informed Cerone that they never gave him an option contract. Instead, they believed they had offered him a "right of first refusal." Consequently, Cerone sued the Dittmans for specific performance on the option contract upon which he believed the parties had agreed. After a bench trial, the trial court issued a detailed order with fifty-three findings of fact and seventeen conclusions of law, ultimately concluding that the three e-mails constituted a valid option contract and ordering the Dittmans to convey their Stable Property to Cerone and Ootzie of Texas, LLC. This appeal ensued.

6

## II. APPLICABLE STANDARDS OF REVIEW

Appellants challenge several of the trial court's findings of fact and conclusions of law. Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina*, 881 S.W.2d at 297. We do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing*, 854 S.W.2d 681, 684 (Tex. App.—Dallas 1993, no writ).

In addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297; *City of Keller v. Wilson*, 86 S.W.3d 693, 710 (Tex. 2002). We uphold the finding if more than a scintilla of evidence exists to support it. *City of Keller*, 86 S.W.3d at 710. In reviewing a factual sufficiency challenge, we examine all of the evidence and set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Accordingly, we apply a de novo standard. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). An

appellant may not challenge a trial court's conclusions of law for factual sufficiency. *BMC Software*, 83 S.W.3d at 794. However, we determine the correctness of the trial court's legal conclusions drawn from the facts. *Id.* If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* In other words, in reviewing challenges to a trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *In re A.M.*, 101 S.W.3d 480, 484 (Tex. App.—Corpus Christi 2002, no pet.).

### III. CONSTRUING THE E-MAIL MESSAGES AS ONE CONTRACT

In issues one, two, and five, the Dittmans argue that the e-mails should not be construed together to create an option contract. The Dittmans cite *Halper v. University of the Incarnate Word* for the proposition that unsigned papers may be incorporated by reference into another document only when they plainly refer to each other. 90 S.W.3d 842, 845 (Tex. App.—San Antonio 2002, no pet.) (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 211 (Tex. App.—San Antonio 1998, no pet.)). Because none of the e-mails "plainly" refer to each other, the Dittmans aver that they cannot be construed together as one contract. *See Owen*, 433 S.W.2d at 166.

Texas law, however, allows us to construe these e-mail messages together to comprise one instrument. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (finding that "a court may determine, as a matter of law, that multiple documents comprise a written contract"). "It is well-established law that

8

instruments pertaining to the same transaction may be read together to ascertain the parties' intent." *City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011) (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840) (internal quotations omitted). "This rule is echoed in statute of frauds jurisprudence: in order to satisfy a statute of frauds, multiple documents can be read together." *Id*. at 137 n.9 (citing the RESTATEMENT (SECOND) OF CONTRACTS § 132). "The multiple documents need not contain all of the terms; instead, only the essential terms are required." *Id*. at 137.

The essential terms of the option contract are found by analyzing the three e-mails together. The Dittmans offered to provide a two-year option to Cerone to purchase their Stable Property. The price of their offer was $2.75 per square foot of their 3.78 acre parcel of property. The consideration for this option contract was that Cerone had to close on the Pasture Property by October 31, 2007, and not terminate the Pasture Property deal. Based on the foregoing, we hold that the essential terms of the option contract were evident. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (setting forth the basic elements of a contract). We conclude that the trial court did not err when it construed the three e-mails together to comprise the option contract, and we overrule issues one, two, and five.

## IV. STATUTE OF FRAUDS

**A.     Applicable Law**

By issues three, four, six, and seven, the Dittmans contend that the three e-mails, interpreted together as an option contract, did not satisfy the statute of frauds. *See* TEX.

9

BUS. & COM. CODE ANN. § 26.01(b)(4) (West 2009). The statute of frauds requires that all contracts for the sale of real estate be in writing and signed by the person to be charged. *Id.*; *see also* TEX. PROP. CODE ANN. § 5.021 (West 2004) (setting forth that the conveyance of land must be in writing and "subscribed and delivered by the conveyor"). The Dittmans argue that the e-mails did not meet the statute of frauds because: they used "futuristic language"; they did not identify the property with reasonable certainty; they were signed with electronic signatures; and Lee did not have authority to bind the Dittmans to an option contract.

## B. Discussion

### 1. "Futuristic" Language

In their third issue, the Dittmans argue that the option contract was "futuristic" and thus unenforceable. "Under Texas law, a writing that contemplates a contract or promise to be made in the future does not satisfy the requirements of the statute of frauds." *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Martco, Inc. v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 928–29 (Tex. App.—Dallas 1982, no writ)). Writings that contain "futuristic" language are insufficient to confirm that a contract or promise is already in existence. *Id.* (citing *Martco*, 632 S.W.2d at 928). The Dittmans state that the language in e-mail number 3, for example, "refers solely to the creation of a future contract for Mr. Cerone's review." E-mail number 3 also states that the Dittmans "will keep [Cerone] posted on the progress" and that they wished to get the contract for the Pasture Property and the alleged option contract "executed as soon as possible."

10

Assuming arguendo that some of these statements could be considered "futuristic," we note that an agreement to make a future contract is enforceable "if it is specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations." *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 146. Here, as we held in section III of our opinion, the three e-mails construed together revealed all of the essential terms of the option contract. *See id.* We overrule this issue.

**2. The Sufficiency of the Property Description**

In their fourth issue, the Dittmans argue the trial court erred in concluding that the three e-mails satisfied the statute of frauds because they failed to identify the Stable Property with reasonable certainty. The statute of frauds requires that the writing furnish the data to identify the property with reasonable certainty. *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (citing *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)). In *Morrow*, the Texas Supreme Court set forth the applicable test for sufficiency of property description:

> The rule by which to test the sufficiency of the description is so well settled at this point in our judicial history, and by such a long series of decisions by this court, as almost to compel repetition by rote: To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.

*Morrow*, 477 S.W.2d at 539.

While the sufficiency of the writing under the statute of frauds is a question of law, "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds." *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 237 (Tex. App.—Dallas 2004, pet. denied)

11

(citing *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248–49 (1955)). To determine the sufficiency of the description, the trial court may consider evidence to determine whether "a person familiar with the area can locate the premises with reasonable certainty." *Id.* Parol evidence may be used to explain or clarify the written agreement, but not to supply the essential terms. *Tex. Builders*, 928 S.W.2d at 481. A description's validity under the statute is not affected by the knowledge or intent of the parties. *See Morrow*, 477 S.W.2d at 540.

A writing need not contain a metes and bounds property description to be enforceable, but it must furnish the data to identify the property with reasonable certainty. *Tex. Builders*, 928 S.W.2d at 481 (citing *Morrow*, 477 S.W.2d at 539). "The legal description in the conveyance must not only furnish enough information to locate the general area as in identifying it by tract survey and county, it need contain information regarding the size, shape, and boundaries." *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

The Dittmans argue that there is no metes and bounds description for the Stable Property, nor is there any mention of the county or state in which the Stable Property is located. The trial court, however, in its conclusions of law, held that the terms "stable property," "3.78 Acre tract," and the "3.78 acre tract of ours in Seabrook" used in the three e-mails were sufficient to identify the land to be conveyed with reasonable certainty. We agree.

Like the trial court, we find the Texas Supreme Court's opinion in *Pickett v. Bishop* dispositive of this question. 223 S.W.2d 222, 223 (Tex. 1949). In *Pickett*, Bishop, the

owner of the land in question, described the land he wanted to sell as "my property described on the opposite side hereof." *Id.* On the reverse side of this writing was the description, "20.709 acres out of John Stephens 60 acres survey in Tarrant County, Texas." *Id.* The Texas Supreme Court held that "the words 'my property' in the body of the instrument are not to be ignored." *Id.* The supreme court went on to elaborate:

> The settled rule in this state is that such a description, by reason of the use in the memorandum or contract of such words as "my property", my land, or "owned by me", is sufficient when it is shown by extrinsic evidence that the party to be charged and who has signed the contract or memorandum owns a tract of property and only one tract of land answering the description in the memorandum. The stated ownership of the certain property is in itself a matter of description which leads to the certain identification of the property and brings the description within the terms of the rule that "the writing must furnish *within itself*, or by reference to some other existing writing, *the means or data* by which the particular land to be conveyed may be identified with reasonable certainty.

*Id.* (internal citations omitted) (emphasis in original).

Here, the trial court found that the Dittmans only owned three pieces of real property—their residential home, the Pasture Property, and the Stable Property. The court's finding of fact number 29 set forth that, "Debbie Dittman testified that the Stable Property was the only piece of real property in the world owned by her and Tim Dittman that was 3.78 acres in size." Accordingly, we find that the description of the Stable Property in the three e-mails satisfied the statute of frauds. Although the description contained neither metes and bounds information, nor the county and state where the property was located, *see Morrow*, 477 S.W.2d at 539, the e-mails provided the means by which the Stable Property could be identified. *See Pickett*, 223 S.W.2d at 223. Extrinsic evidence, such as Debbie Dittman's testimony, allowed the Stable Property to

13

be identified with reasonable certainty.   *Id.*   We overrule the Dittmans' fourth issue.

### 3. Use of Electronic Signature

By their sixth issue, the Dittmans contend that the e-mails do not satisfy the statute of frauds because the parties did not agree to conduct transactions by electronic means.   Under Texas law, "whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct."   TEX. BUS. & COM. CODE ANN. § 322.005(b) (West 2011). The Dittmans argue that all of the e-mails were signed with electronic signatures only, and this was never contemplated by the parties.   The first two e-mails were signed by "David", or David Lee, the Dittmans' real estate agent, and the last e-mail was signed by "Debbie."

We disagree with the Dittmans' assessment that the parties did not intend to conduct some of their transactions electronically.   The trial court's findings of facts are replete with instances where the parties exchanged communications regarding offers and counteroffers about the Stable Property via e-mail messages.   The following findings of fact demonstrate this conduct:

14.   On October 30, 2007, David Lee sent an e-mail to Anthony Cerone (Plaintiff's Exhibit 6, page 2) with the Dittmans' offer.   The Dittmans both testified that they had offered David Lee to send that e-mail. Debbie Dittman testified that that e-mail was copied to them contemporaneously, that they saw it the afternoon or early evening of October 30, 2007, that the statements in the first paragraph were accurate, and that neither she nor Tim Dittman communicated either to David Lee or to Anthony Cerone that anything in that e-mail was incorrect or that David Lee had not been authorized to send it.

15.   Within a few minutes after receipt of David Lee's e-mail, Anthony Cerone responded by a reply e-mail (Plaintiff's Exhibit 6, Page 1).   In

that e-mail, Anthony Cerone stated that he accepted the Dittmans' offer of a two year option to purchase the Stable Property for $2.75 per square foot to waive his right to terminate the Contract and close the next day. . . .

We hold that the evidence is legally sufficient to support a finding that the parties intended to conduct certain business electronically. *See City of Keller*, 86 W.3d at 710. We further hold that the evidence to support this finding is not so weak so as to go against the great weight and preponderance of the evidence or to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule the Dittmans' sixth issue.

### 4. Lee's Authority to Act for the Dittmans

The Dittmans' seventh issue challenges Lee's authority to bind the Dittmans to an option contract. This issue is yet another factual question upon which the trial court issued findings of fact. *See Catalina*, 881 S.W.2d at 297. The trial court made the following findings of fact: that "Tim Dittman instructed David Lee to tell Anthony Cerone that they would give him a two year option contract to purchase the Stable Property" (finding of fact 14); that the "Dittmans both testified that they had authorized David Lee to send" the October 30, 2007 e-mail regarding the option contract (finding of fact 15); and that Lee's e-mail to Cerone regarding the option contract "was sent with their knowledge and consent, and that after they received a copy, they did not communicate either to David Lee or to Anthony Cerone that anything contained in that e-mail was incorrect or that David Lee was not authorized to send it" (finding of fact 19).

Considering only the evidence and inferences that support this finding and disregarding all the evidence and inferences to the contrary, we hold that these findings are supported by legally sufficient evidence. *See City of Keller*, 86 S.W.3d at 710. We

15

further conclude these findings are not against the great weight and preponderance of the evidence, nor are they clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule the Dittmans' seventh issue.

## V. CONTRACT LAW

### A. Applicable Law

The Dittmans, in issues nine through fourteen and seventeen, challenge several of the trial court's findings of fact and conclusions of law concerning contract law. We determine the correctness of the trial court's legal conclusions—in this case, whether a proper option contract existed—from the findings of fact. *See BMC Software*, 83 S.W.3d at 794. The elements of an enforceable contract are: (1) an offer; (2) acceptance that mirrors the terms of the offer; (3) consideration; (4) meeting of the minds; (5) communication that each party has consented to the terms of the agreement; and (6) execution or delivery of the contract with the intent that it be mutually binding. *Advantage Physical Therapy, Inc.*, 165 S.W.3d at 24.

### B. Discussion

#### 1. Offer, Acceptance, and Consideration

In issues nine through thirteen, the Dittmans contest that the "alleged option contract" set forth a sufficient offer, acceptance, and consideration. The trial court, in its extensive findings of fact and conclusions of law, documented that all of these elements had been found in its consideration of the evidence and the law:

> 3. The surrender by Anthony Cerone of his right to terminate the [Pasture Property] Contract in exchange for an option to purchase the Stable Property constituted sufficient and valid consideration for the option.
>
> . . . .

16

7.  Anthony Cerone's October 30, 2007 e-mail (page 1 of Plaintiff's Exhibit 6) did not constitute a rejection of the offer contained in David Lee's e-mail (page 2 of Plaintiff's Exhibit 6).  Even if Anthony Cerone's e-mail were to be considered a rejection of the offer of an option, the option was offered again and accepted again the next day, October 31, 2007.

8. The three October 30 and 31, 2007 e-mails (page 2 of the Plaintiff's Exhibit 6, Plaintiff's Exhibit 7 and Plaintiff's Exhibit 8) contained every term material to an enforceable option and every term required to be in writing.

Viewing the trial court's findings in a light favorable to the conclusion that an enforceable contract existed, we hold that this finding is supported by legally sufficient evidence.  *See City of Keller*, 86 S.W.3d at 710.  We further conclude that the finding that a valid option contract existed was not against the great weight and preponderance of the evidence or clearly wrong and unjust.  *Cain*, 709 S.W.2d at 176.  We overrule the Dittmans' ninth, tenth, eleventh, twelfth, and thirteenth issues.

### 2.  Meeting of the Minds

In their fourteenth issue, the Dittmans challenge whether there was a "meeting of the minds" because the Dittmans thought they were offering a right of first refusal, as opposed to an option contract.  "A right of first refusal, also known as a preemptive or preferential right, empowers its holder with a preferential right to purchase the subject property on the same terms offered by or to a bona fide purchaser."  *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 644 (Tex. 1996).  An option contract, on the other hand, is a "privilege or right which the owner of property gives another to buy certain property at a fixed price within a certain time."  *State v. Clevenger*, 384 S.W.2d 207, 210 (Tex. Civ. App.—Houston 1964, writ ref'd n.r.e.).

17

"Whether the parties reached an agreement is a question of fact." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 653 n.8 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Here, the trial court made the following factual findings:

39. The term "option" as used in David Lee's October 30, 2007 e-mail to Anthony Cerone (Plaintiff's Exhibit 6, page 2), David Lee's October 31, 2007 e-mail to Anthony Cerone (Plaintiff's Exhibit 7) and Debbie Dittman's October 31, 2007 e-mail to David Lee (Plaintiff's Exhibit 8) is not ambiguous and is susceptible to only one reasonable meaning.

40. The Dittmans knew, by no later than the end of the day on October 30, 2007, that by giving Anthony Cerone an option, they were giving him the right to buy the Stable Property for $2.75 a square foot at any time within two years.

There was also evidence in the trial record that Baccus had explained what an option contract was to Tim Dittman during these e-mail negotiations. Further, the trial court made the following conclusions of law on this issue:

4. The term "option" as used in David Lee's e-mails to Anthony Cerone and Debbie Dittmans's e-mail to David Lee to be passed on to Anthony Cerone is not ambiguous.

5. The determination of the meeting of the minds, and thus offer an[d] acceptance, is based on the objective standard of what the party said and did and not on their subjective state of mind. Since there is no dispute that the word "option" was used, the Dittmans' construction of the meaning of that term is immaterial. There was a meeting of the minds—the Dittmans agreed that Anthony Cerone or his assignee had the right, for a period of two years, to buy the Stable Property for $2.75 per square foot.

Viewing the trial court's findings that the term "option" was not ambiguous and that the Dittmans understood what the term meant in a light favorable to the verdict, we hold that these findings are supported by legally sufficient evidence. *See City of Keller*, 86 S.W.3d at 710. We further conclude that the evidence to support these findings is not

18

against the great weight and preponderance of the evidence or clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule the appellants' fourteenth issue.

### 3. "Not Brought Under or With Relation To" Language

In issue seventeen, the Dittmans argue the trial court erred in holding that the lawsuit over the option contract was "not brought under or with relation to" the earnest money contract on the Pasture Property. This was a conclusion of law made by the trial court. In reviewing challenges to a trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *In re A.M.*, 101 S.W.3d at 484. Because this conclusion is amply supported by the trial court's findings of fact on the evidence, we overrule issue seventeen.

### VI. THE STATUTE OF CONVEYANCES AND TEXAS FAMILY CODE

In their eighth issue, the Dittmans aver that the alleged option contract violates the statute of conveyances and section 3.102 of the Texas Family Code. *See* TEX. PROP. CODE ANN. § 5.021 (West 2011) (providing that any conveyance of real property must be in writing and delivered by the conveyor or by the conveyor's agent authorized in writing); TEX. FAM. CODE ANN. § 3.102 (West 2011) (prohibiting the conveyance of title to community property unless it is signed to or agreed by both spouses).

With regard to the statute of conveyances, as we held earlier, the trial court did not err when it construed the three e-mails together to comprise the option contract. Because the option contract is in writing, the statute of conveyances is met. *See* TEX. PROP. CODE ANN. § 5.021. Further, and as previously observed, an option contract "gives another [the option] to buy certain property at a fixed price within a certain time."

19

*Clevenger*, 384 S.W.2d at 210. "The owner does not sell the property, but sells the privilege to buy at the option of the other person . . . . It conveys no title to the thing sold." *Knox v. Brown*, 277 S.W. 91, 94 (Tex. Comm'n App. 1925, judgm't adopted). Consequently, as the trial court correctly noted in its conclusions of law, an option contract conveys no title. *See Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381, 391 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.) (holding that the statute of conveyances does "not even enter into the picture" with an option contract).

Because we conclude that no conveyance occurred, Texas Family Code section 3.102, which deals with the conveyance of title of community property, is not triggered. *See* TEX. FAM. CODE ANN. § 3.102. However, even if this statute was implicated, there is no evidence in the record to show that it was violated. Section 3.102 provides that "community property is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." *Id.* The Dittmans argue that Debbie had no right to convey or encumber the community property at issue without a written power of attorney from her husband Tim. *See id.* It is uncontested that there was no written power of attorney between the Dittmans. However, the trial court made several findings of fact that there was some "other agreement" between Debbie and Tim Dittman. *See id.* Here is one such finding:

> 36. Debbie Dittman's October 31, 2007 e-mail to David Lee, Plaintiff's Exhibit 8, was sent with the prior knowledge, consent and authorization of Tim Dittman, was sent with the intent that it be forwarded or others provide to Anthony Cerone, was intended by Tim Dittman to be from him as well as from Debbie Dittman, and was sent by the Dittmans to induce Anthony Cerone to waive his right to terminate the Contract and consummate the

20

purchase of the 34.59 Acre Tract with the outstanding oil, gas, and mineral leases."

The Dittmans cited *Alamo Country Club Owners Association v. Shelton*, No. 13-10-00300-CV, 2012 WL 3792753, at **23–24 (Tex. App.—Corpus Christi Aug. 31, 2012, no pet.) (mem. op.), and *Vallone v. Miller*, 663 S.W.2d 97, 99 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), for the proposition that one spouse cannot encumber another's property without agreement. In *Alamo Country Club*, a husband conveyed a warranty deed to a home on a golf course without his wife's signature. *See Alamo Country Club*, 2012 WL 3292753, at *24. Similarly, *Vallone* dealt with a husband who attempted to transfer property without his wife's signature. *Vallone*, 663 S.W.2d at 99. However, those cases are distinguishable from this case because in both cases, there was no evidence to show that that the wives knew what was occurring with regard to the conveyance of the community property. Here, the trial court made specific findings of fact that both Tim and Debbie Dittman had an "agreement" to bind each other's interests regarding the sale of the Pasture Property. *See generally Muller v. Evans*, 516 S.W.2d 923, 923–24 (Tex. 1974) (noting that section 3.102 was amended in 1973 to no longer require that spousal agreements regarding the disposition of property had to be in writing).

We overrule this eighth issue.

## VII. Fraud

In issues fifteen and sixteen, the Dittmans argue the trial court erred when it determined that the Dittmans committed fraud. A fraud cause of action requires a material misrepresentation, which was false, which was either known to be false when

made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998).

The trial court found that despite numerous e-mail messages from the Dittmans and their authorized agent Lee offering a two-year option contract for the Stable Property to Cerone in exchange for closing on the Pasture Property sooner, "on November 15, 2007, the Dittmans' attorney e-mailed Anthony Cerone's attorney and advised him that the Dittmans denied having given Anthony Cerone an option to purchase the Stable Property." The trial court also found that, after considering testimonial and documentary evidence, both Anthony Cerone's and David Lee's testimonies were "consistent, credible and persuasive," while "the Dittmans' testimony was at times inconsistent and in conflict with their actions and the other evidence." Critically, the trial court also made the following finding of fact on the fraud issue:

> 41. When the Dittmans told David Lee to tell Anthony Cerone that they would give him a two year option to purchase the Stable Property for $2.75 a square foot if he would close and consummate the purchase of the 34.59 Acre Tract on October 31, 2007, *they had no intention of fulfilling that agreement.* (Emphasis added).

Here, considering only the evidence and inferences that support this finding of fraud and disregarding all the evidence and inferences to the contrary, we hold that this finding is supported by legally sufficient evidence. *See City of Keller*, 86 S.W.3d at 710. Further, we conclude that the fraud finding is not against the great weight and preponderance of the evidence or clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule the Dittmans' fifteenth and sixteenth issues.

22

## VIII. AFFIRMATIVE DEFENSE

By their eighteenth issue, the Dittmans contend the trial court erred in ignoring their affirmative defense based on the Texas Occupations Code, which provides that clients cannot be held liable for any damages caused by the misrepresentation or concealment of material facts by their real estate broker. *See* TEX. OCC. CODE ANN. 1101.805 (West 2004). The Dittmans argue that "Lee as the real estate license holder[] made misrepresentations to the Dittmans" and "knew or had reason to know that the Dittmans did not understand the difference between an option and a right of first refusal."

Here again, we rely on the trial court's findings of fact:

31. David Lee's testimony was consistent, credible and persuasive.

32. The Dittmans' testimony was at times inconsistent and in conflict with their actions and the other evidence.

. . . .

39. The term "option" as used in David Lee's October 30, 2007 e-mail to Anthony Cerone (Plaintiff's Exhibit 6, page 2), David Lee's October 31, 2007 e-mail to Anthony Cerone (Plaintiff's Exhibit 7) and Debbie Dittman's October 31, 2007 e-mail to David Lee (Plaintiff's Exhibit 8) is not ambiguous and is susceptible to only one reasonable meaning.

40. The Dittmans knew, by no later than the end of the day on October 30, 2007, that by giving Anthony Cerone an option, they were giving him the right to buy the Stable Property for $2.75 a square foot at any time within two years.

. . . .

44. Neither David Lee nor Transwestern had any knowledge[,] notice[,] or reason to suspect that Tim Dittman or Debbie Dittman believed an option was the same as, or a variation of, a right of first refusal, or understood it to mean anything other than the right to buy property at a fixed price within a certain time.

23

Considering only the evidence and inferences that support these factual findings, we hold that they are supported by legally sufficient evidence. *See City of Keller*, 86 S.W.3d at 710. Further, we conclude that the evidence to support these findings is not so weak so as to go against the great weight and preponderance of the evidence or to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule the Dittmans' eighteenth issue.

## IX. CONCLUSION

Having overruled all of appellants' issues on appeal, we affirm the trial court judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
31st day of October, 2013.

24